OKEMAH CONSTRUCTION,
INC., Appellant,

v.

BARKLEY–FARMER, INC., Appellee.

No. 17398.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 17, 1979.
Rehearing Denied June 21, 1979.

David Ford Hunt, Dallas, for appellant.

Smither, Martin & Haggard, J. M. Haggard, Huntsville, for appellee.

Before COLEMAN, C. J., and PEDEN and DOYLE, JJ.

COLEMAN, Chief Justice.

Okemah Construction, Inc., brought this action to recover the money alleged to be due and owing to it by Barkley-Farmer, Inc., under a contract between the parties dated May 5, 1977. The trial was to the court without a jury and resulted in a judgment for the plaintiff in the sum of $27,656.16, plus attorney's fees. The plaintiff was not satisfied with the amount of the judgment and has appealed. Findings of fact and conclusions of law were filed. The judgment will be affirmed as modified.

On May 5, 1977, by a letter agreement, Barkley-Farmer entered into a contract with Okemah under the terms of which Okemah would remove 67 miles of pipe from the ground, cut it into 40 foot lengths and load it onto trailers. Barkley-Farmer agreed to pay Okemah 59 cents per lineal foot of pipe so removed. Okemah agreed to furnish two suitable trailers for use in transporting the pipe and Barkley-Farmer agreed to furnish such additional trailers as might be necessary "to assure a steady and even work flow, weather conditions permitting and taking into account that some 50,000 lineal feet of pipe will be removed from the ground and loaded on trailers each week."

Okemah began work on May 18 or 19, 1977 and, according to its president, Mr. Tinkler, encountered delays in performing the contract due to the shortage of trailers to be furnished by Barkley-Farmer. At Tinkler's request Mr. Farmer, president of Barkley-Farmer, met him on June 4, 1977, to discuss the contract. Mr. Tinkler testified that he told Farmer that Okemah wasn't making money on the contract and that he would have to cut his crew down in order to try to break even on the job. He testified that he told Farmer that if he wanted him to he would pull off the job.

Farmer testified that at the meeting Tinkler made a demand on him for more money and that he agreed to pay 90 cents a foot under the condition that Tinkler deliver 50,000 feet of pipe a week. Tinkler testified that they agreed on a goal of 50,000 feet of pipe a week but that maintaining such a schedule was not a condition to the payment of the 90 cents per foot. Farmer also agreed to furnish more trailers.

After the meeting, the work continued and Farmer furnished more trailers. Okemah added six or seven men, a side boom and a dozer. Farmer paid Okemah at the rate of 90 cents a foot for the pipe already delivered and paid certain invoices, the last being dated June 28, 1977. No payment was made for invoices # 123 through # 131, totaling $141,283.71. This suit was subsequently filed.

The principal point of contention is the validity of the oral modification of the written contract to provide 90 cents per foot rather than the original agreed compensation of 59 cents a foot. The trial judge found that Mr. Tinkler advised Mr. Farmer at the June 4, 1977, meeting that he must be paid 90 cents per lineal foot or Mr. Tinkler would cut down his crew that was removing the pipe. The defendant agreed to pay plaintiff 90 cents per lineal foot of pipe removed and loaded onto trailers. The defendant paid plaintiff at the rate of 90 cents per lineal foot for some pipe removed and loaded onto trailers by plaintiff.

As its conclusions of law the court found:

"(1) The written contract between plaintiff and defendant of May 5, 1977 is a valid and enforceable agreement.

(2) The purported modification of the May 5, 1977 contract is not enforceable by reason of a lack of fresh consideration in that plaintiff promised to do nothing that he was not already bound to do under the written contract."

The trial court has included in the second conclusion of law a crucial finding of fact, that there was no consideration for the defendant's promise to pay increased compensation to the plaintiff for its performance under the contract.

The plaintiff contends that the trial court erred in concluding that the modification of the May 5, 1977, contract is not enforceable by reason of a lack of consideration because the defendant had filed no pleading as required by Rule 94, T.R.C.P., alleging failure of consideration.

■ A consideration is essential to the validity of a simple contract, whether it be verbal or in writing. A written contract implies consideration. Where a cause of action is based on a written contract, the burden rests upon the defendant to plead and prove a want of consideration to defeat the action. Where a cause of action is based on an oral contract the burden is on the plaintiff to plead and prove a cause of action which would include the element of consideration. *Wright v. Robert & St. John Motor Co.,* 122 Tex. 278, 58 S.W.2d 67 (1933); *Chittim v. Martinez,* 94 Tex. 141, 58 S.W. 948 (Tex.1900); *Stone v. Morrison & Powers,* 298 S.W. 538 (Tex.Com.App.1927, holding approved); *Signs v. Bankers Life & Casualty Co.,* 340 S.W.2d 67 (Tex.Civ.App.—Dallas 1960, no writ).

There was conflicting testimony as to whether the production of 50,000 feet of pipe was agreed on as a condition to the payment of the increased compensation. By finding no "fresh" consideration, the trial judge necessarily found that the increased production was not a condition but merely a goal. Such a finding is supported by the evidence.

■ Tinkler's agreement to continue to work toward the goal of 50,000 feet of pipe a week was no consideration for the promise of increased payment by Farmer. Okemah undertook no new burden by the promise, nor did Barkley-Farmer receive anything it was not entitled to receive under the terms of the original contract. A supplemental or amendatory agreement whereby a new or additional obligation is assumed must be supported by a consideration. *Stone v. Morrison & Powers,* 298 S.W. 538 (Tex.Com.App.1927, holding approved); *Caudle v. Eliasville State Bank,* 93 S.W.2d 779 (Tex.Civ.App.—Fort Worth 1936, no writ).

The circumstances suggest that Okemah tacitly agreed to forego its threatened reduction of the work force. Tinkler made no express promise to that effect. "The mere presence of some incident to a contract which might, under certain circumstances, be upheld as a consideration for a promise, does not necessarily make it the consideration for the promise in that contract. To give it that effect, it must have been offered by one party and accepted by the other, as one element of the contract." *Fire Ins. Ass'n v. Wickham,* 141 U.S. 564, 579, 11 S.Ct. 84, 88, 35 L.Ed. 860 (1891), quoted in *Johnson v. Breckenridge-Stephens Title Co.,* 257 S.W. 223, 226 (Tex. 1924).

The Supreme Court of Texas approved the statement, quoted from *Wickham,* that "nothing is a consideration that is not regarded as such by both parties. To constitute a valid agreement, there must be a meeting of minds upon every feature and element of such agreement, of which consideration is one." *Missouri, K. & T. Ry. Co. of Texas v. Smith,* 98 Tex. 47, 81 S.W. 22, 25 (1904).

■ Okemah asserts that the trial court erred in failing to find that Barkley-Farmer is estopped to deny that the oral agreement is enforceable. Okemah thus asserts that the doctrine of promissory estoppel is applicable to the facts of this case. The Restatement, Contracts, § 90, says:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The Supreme Court of Texas has said:

". . . where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained . . . all that

is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise." *Wheeler v. White,* 398 S.W.2d 93 (Tex.1965).

In the case above cited, the court further pointed out that damages based on a loss of anticipated profits could not be recovered. Thus, Okemah is not entitled to recover the price per foot orally agreed upon but would be entitled to recover any loss which it sustained by reason of its reliance on the promise to pay. The money which Okemah lost, if any, by reason of its reliance on the promise, is not shown in the record. The trial court did not err in refusing to enter judgment based on the theory of promissory estoppel.

■ Okemah contends that it is entitled to prejudgment interest at the rate of 6% from August 15, 1977, to date of judgment. The trial court found that Barkley-Farmer was indebted to Okemah in the amount of $27,656.16, under the written contract. When a definite sum of money is determined to have been due and payable at a date certain prior to judgment, the legal rate of interest should be allowed thereon from such date to the date of judgment. *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480 (Tex.1978).

■ Barkley-Farmer was holding and using money due to Okemah without its consent. The award of interest on that money is necessary to avoid unjust enrichment of Barkley-Farmer. The judgment of the trial court will be modified by awarding interest at the rate of 6% per annum on the sum of $27,656.16, due Okemah, from August 15, 1977, to the date of judgment, November 27, 1978.

■ Finally Okemah presents points of error concerning the court's failure to find that under *quantum meruit* Okemah was entitled to recover from Barkley-Farmer the sum of $141,283.71. The trial court has found a valid written contract between the parties and has permitted recovery thereunder. A recovery cannot be sustained in *quantum meruit* if there be a valid ex-

pressed contract. *Teague v. Edwards,* 159 Tex. 94, 315 S.W.2d 950 (Tex.1958).

Other points of error presented have been examined and found to be without merit and to require no discussion.

The judgment of the trial court will be modified and as modified affirmed.